IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

EBSCO INDUSTRIES, INC. and PLASTIC
RESEARCH AND DEVELOPMENT
CORPORATION                                                                                        PLAINTIFF

v.                                          Civil No. 05-2062

BOB MICHAELS OUTDOOR SPORTS,
INC., an Arkansas Corporation, and
MICHAEL R. CORDELL, individually                                                    DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiffs allege federal and state law claims of trademark infringement and unfair competition. Plaintiffs' motion for preliminary injunction was referred to the undersigned. A hearing was conducted on August 5, 2005. The parties submitted post-hearing briefs. (Docs. 34, 36).

DISCUSSION

Plaintiff PRADCO is a manufacturer and seller of fishing lures under a variety of brand names including "Cotton Cordell" and "Cordell." PRADCO is a wholly owned subsidiary of plaintiff EBSCO.

Defendant Bob Michaels is a manufacturer and seller of sporting items including fishing lures. Defendant Michael Cordell is the president and primary shareholder of Bob Michaels. Michael's father, Cotton Cordell, owns stock and works in the company.

Cotton Cordell founded Cordell Tackle in the 1960's. One of the Cordell assets was the "Big O" lure, the original of which was hand-carved by Fred Young in 1967 out of balsa wood and named for Fred's brother Otis. Young is now deceased. Cordell manufactured a plastic version of the

original "Big O" which was a good seller. When Young sold the "Big O" to Cordell, he signed an agreement giving Cordell the "right and privilege" to use his name in advertising in conjunction with the lure. (Pls.' Exs. 11, 6). On a lure package for the "Big O," Cordell Tackle printed "Originated and Designed by Mr. Fred Young of Oak Ridge, Tennessee and Built by Cotton Cordell." (Pls.' Ex. 7).

EBSCO purchased Cordell Tackle in 1980. The assets included the inventory of tackle, goodwill, trademarks, trademark rights, service marks, and copyrights. (Pls.' Ex. 4, Asset Purchase Agreement). A March 1981 trademark assignment indicated the various marks obtained by EBSCO under the agreement. (Defs.' Ex. 3). "Cordell" was registered in 1969, "Big O" in 1974, and "Cotton Cordell" in 1975.

In a consulting and non-competition agreement (Pls.' Ex. 4), Cordell assigned "irrevocably and forever" the exclusive right to use the names "Cordell" or "Cotton Cordell" and agreed not to grant or assign to anyone the right to use the names in connection with the tackle business or any related business activities in any manner that would be or is confusingly similar to or which creates a likelihood of confusion with the use of the name by EBSCO. Cordell was free to engage in other business activities not inconsistent with the limitations of the agreement and could publish articles or books relating to the sport of fishing and could produce and perform in television shows or engage in such other aspects of the sporting goods business or in the business of sport fishing.

PRADCO promotes its lures sold under the names "Cordell," "Cotton Cordell," and "Big O" in print advertising, on television, in magazines and catalogs, and on Lurenet.com. Since 1995, the company has earned $34 million from the sale of Big O's and has spent $6 million in advertising. PRADCO sells its lures through retail distributors including tackle shops, sporting good stores, mass

merchants and over the internet. Most of PRADCO's business comes from large retailers, such as Wal-Mart, and companies that resell to smaller shops. Only about one percent is from direct internet sales.

PRADCO issues 30 to 35 thousand catalogues each year. In the catalogues, PRADCO has consistently related the history of Fred Young's association with the "Big O." (Pls.' Ex. 8). The story is related on the PRADCO's website and public relations managers have provided sports writers Fred Young's name for stories over the years. In 1992, PRADCO manufactured a rendition of a signed Fred C. Young "Big O" for the 25th anniversary of the Bass Anglers Sportsman Society. (Pls.' Ex. 1). An insert in the packaging explained the creation of the "Big O" by Young.

Last year PRADCO manufactured "The Original Fred Young Big O Lure" in balsa wood, explaining on the packaging the history of the lure. (Pls.' Ex. 2). The package shows a photograph of Young wearing a "Cotton Cordell" hat. PRADCO made an agreement with Cabela's that the lures would be an exclusive offering in Cabela's catalogue which came out in early 2005. The prototype lures were obtained from Bobby Murray, employee of PRADCO, who also obtained the photograph of Fred Young from the Cordells. The lure sells for $7.99.

In September 2004, Bob Michaels applied for a trademark for the name Fred C. Young. (Defs.' Ex. 7). Bob Michaels also applied for and received ownership of the internet domain name "cottoncordell.net." The website is not as yet activated but Bob Michaels intends to make use of it.

Last year Bob Michaels manufactured two separate lures named after Fred Young, "Fred's Original" and "Fred's Secret." (*See* Pls.' Ex. 3, Defs.' Ex. 8). The front of the packages states the lures are manufactured by "Fred C. Young Lure Company" and Fred Young's photograph is displayed. On the back is another photo of Fred Young with his signature and the following:

Return of a Legend

> The word "legend" gets thrown around way too much these days . . . but you're holding one right now.  Fred C. Young™ lures are quite possibly the most exacting, painstakingly built pure balsa lures ever produced in quantity.  We don't skimp on quality; there are no hardwood cores for screw eyes, no resin fillings, no hard plastic chassis to mount the wood in.  We still build each lure the old fashioned way, one at a time, right here in the USA.  We seal and pain coat the body several times to ensure a quality durable finish. Every lip is laser cut from electrical circuit board, just like Mr. Fred used in his original lures.
>
> Hand-inserted wire hook hangers and premium hooks finish off each masterpiece.  Choose from any of Mr. Fred's original colors, give it a cast and feel the difference of a true balsa lure.  We're sure that as you start reeling and smiling . . . Mr. Fred will be smiling back at you.
>
> The great fishin' times are back!
> *Mike Cordell*

Bob Michaels gave Bass Pro Shops exclusive rights to the lures which sell for $14.99.  In the most recent Bass Pro Shop catalogue (Defs.' Ex. 2), the "new Fred C. Young original balsa classics" are featured on the back page.  Bob Michaels had final approval of the wording of the advertisement which states that each lure is handcrafted by hand to Mr. Fred's precise specifications.  The ad states that Young carved the prototype for "Fred's Original" in the early 1970's and the lure is a classic "alphabet" bait.   The ad explains that the prototype for "Fred's Secret" is a flat crank carved by Young for Cotton Cordell years ago that never went into production and this is the "First time ever sold!"  Photographs of the original prototypes are shown together with the recreations.  The ad features a photograph of Cotton Cordell with his endorsement that his son is "building them as close as possible to the way Mr. Fred did. I wouldn't approve anything less."  The ad also states:

> Cotton Cordell, the man who made fishing history by introducing the revolutionary Big O® "alphabet" crankbait in 1972, has persuaded his son, Mike, to produce more of Fred Young's long-hidden original designs.  Together, Cotton and Mr. Fred created a bass fishing legend

> - the forerunner of many of today's deadliest hardbaits. Mike is making the "new" originals the old-fashioned way, by hand, using 100% pure balsa wood, real electrical circuit board lip material, and premium hooks and hardware!

When PRADCO and Cabela employees learned of the new Bob Michaels lures, they were upset. The Cabela company officials initially believed that PRADCO had double-crossed them. Some Cabela employees were unhappy about waiting to launch the lure, stating that the same lure was for sale in the Bass Pro Shops catalogue. PRADCO had another problem with a major customer who had been advised the lures were exclusive to Cabela's, then saw the lures in the Bass Pro Shops catalogue and thought PRADCO has lied to him. Kim Norton, Cabela's Fishing Tackle Manager, testified that although initial catalogue sales were strong for the PRADCO "Big O" rendition, they have fallen off and not followed the usual sales curve.

The writer of an article in the July 2005 *Fishin' Magazine* indicated his belief that Bob Michaels "Fred's Original" is a new version of the "Big O." Writer Rufus Harris states that Fred Young single-handedly changed and revolutionized crankbaits when he carved his first bait in 1967. It is estimated he carved between 3,500 to 4,000 of the original "Big O"'s - most of which were signed and numbered - and he also carved a very few other minnow shaped and fat body baits but none were produced or sold. Harris states that the popularity of the "Big O" remains strong even today and two major tackle retailers have reintroduced their own version of the original "Big-O," Bass Pro Shops (Bob Michaels) and Cabela's (PRADCO).

Bruce Stanton, General Manager of PRADCO's fishing division, testified that the "Big O" and Fred Young's names are one and the same to retailers and the buying public. The lure was Young's claim to fame. In his view, Bob Michaels is playing off the reputation PRADCO has built

the last 30 years since buying Cordell Tackle and promoting the "Big O." Stanton admits that other companies make baits similar to the "Big O" and put side by side the customer may not see the difference. However, PRADCO makes the "Big O" linked to Fred Young.

Bobby Murray, a well-known fisherman who has worked for PRADCO for 20 years and before that worked for Cordell Tackle, offered that Fred Young is an historical icon who started a "legacy" and his name is synonymous with the "Big O." After the "Big O" hit the market, other manufactures came up with various alphabet lures and similar lures but none was called the "Big O" or used Young's name until the defendants made their lures last year.

Robert Dennis, who previously worked for PRADCO from 1980 to 1988 and now works for Bob Michaels, denied that the "Big O" was promoted while he was at PRADCO, recalling that the emphasis at the time was to get away from crank baits because the Rebel and Bomber companies (later acquired by PRADCO) had that business. He added that the "Big O," originally made in plastic, is not even produced any more.

Dennis provided the background of Bob Michaels' decision to manufacture Fred Young lures. Cotton Cordell tried to promote some "new" lures carved by Fred Young to PRADCO but after a meeting he never heard back. Mr. Cordell wanted back in the lure business and wanted to be active. The box of baits used as the prototypes belonged to Mike Cordell and were thin flat-sided lures except for one fat body. The decision was made to manufacture replicas of the baits using balsa wood and circuit board lips, the same as Young. The "Big O" had come and gone but it was that lure that started the crankbait line. Fred Young's name was used to "lend credibility" to Bob Michaels' crankbait line and give the line the "quality" associated with his name. Dennis called Bass Pro

Shops to set up the back page advertisement. Bob Michaels had the final approval of the wording on the back page.

Cotton Cordell, who appeared to have a faulty memory in some respects at the hearing, denied having read any of the 1980 agreements selling the Cordell Tackle business to PRADCO. He denied making any kind of contract with Young to use his name in selling the "Big O," explaining that he was in the bass fishing hall of fame and did not need Fred's name. He said he only made a "handshake" agreement to sell Young's baits. However, he identified his signature on the written agreement which assigned the use of Young's name to Cordell Tackle. Mr. Cordell explained that PRADCO has been writing him for years about using the name "Cotton Cordell" and he thought that if he used Fred Young's name, they would get off his back. He added that Fred Young's name is not famous and he is merely trying to do him a favor by making him famous.

Mike Cordell testified that Bob Michaels tried to replicate Fred Young's lures as closely as possible, including using a lasered fenolic board for the lips. He stated that his company is not making PRADCO's "Big O" which is larger in the tail and wider in the face than most of Young's lures. He added that Bobby Murray obtained the photograph of Fred Young used on the PRADCO lures by pretending he needed it for Young's nomination to a fishing hall of fame. He denied that Fred Young's name was known in the industry prior to his registering his name and said he wanted to bring back memories to old-timers who could pass along their recollections to newcomers. He admitted that Young was not known for any lure other than the "Big O."

The four equitable factors that govern preliminary injunctive relief in this circuit are the probability of success on the merits, the threat of irreparable harm to the moving party, the state of balance between this harm and the injury caused by granting an injunction, and the public interest.

*Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1020 (8th Cir. 2002) (citing *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113-14 (8th Cir. 1981)). The issue is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. The burden of proving that a preliminary injunction should issue rests with the movant. *Modern Computer Systems, Inc. v. Modern Banking Systems, Inc.*, 871 F.2d 734, 737-38 (8th Cir. 1989) (en banc).

*Success on the Merits*

"In deciding whether to grant a preliminary injunction, `likelihood of success on the merits is most significant.'" *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995)(citing *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir.), *cert. denied*, 506 U.S. 863 (1992)).

Plaintiffs allege trademark infringement in violation of the Lanham Trademark Act, 15 U.S.C. 1114(a), and unfair competition, dilution, and improper domain name registration in violation of 15 U.S.C. §1125. Plaintiffs also allege state law claims of infringement and unfair competition.

Plaintiff have a substantial chance of prevailing on their infringement claims. The "hallmark of any trademark infringement claim" is the likelihood of consumer confusion" through the use of a trademark. *Minnesota Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997) (citations omitted). "Prohibiting trademark infringement protects trademark owners and consumers from likely confusion." *Everest Capital Ltd. v. Everest Funds Management, L.L.C.*, 393 F.3d 755, 762 (8th Cir. 2005).

In making the determination of the likelihood of consumer confusion, the court should consider (1) the strength of the owner's mark, (2) the similarity between the owner's mark and the

alleged infringer's mark, (3) the degree to which the products compete with each other, (4) the alleged infringer's intent to pass off its goods as those of the trademark owner, (5) incidents of actual confusion, and (6) whether the degree of purchaser care can eliminate any likelihood of confusion that would otherwise exist. *Id.,* at 759-760; *Minnesota Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997). *See Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999); *SquirtCo v. Seven-Up Co.* 628 F.2d 1086, 1091 (8th Cir. 1980).

A strong distinctive mark is entitled to greater protection than a weak or commonplace mark. *Id.*, at 1091. "A distinctive trademark is one that is capable of identifying the source of goods because it is either inherently distinctive or, if not inherently distinctive, has acquired distinction by acquiring secondary meaning." *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994).

In evaluating the strength of a mark, courts consider "the existence of federal registration, the long-term use of the mark by the owner, the extent of public exposure for the mark through advertising, promotion and unsolicited publicity, and the owner's actions to protect its marks through the successful use of cease and desist letters and litigation." *Board of Trustees of University of Arkansas v. Professional Therapy Services, Inc.*, 873 F.Supp. 1280, 1285 (W.D. Ark. 1995).

Registration of a mark is prima facie evidence of its validity. 15 U.S.C. § 1057(b). However, is not necessary that the trademark be registered to obtain protection from infringement. *Everest Capital Ltd. v. Everest Funds Management, L.L.C.*, 393 F.3d 755, 759 (8th Cir. 2005)(citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 767-68 (1992)). Rather, it is the use in business of the mark and not registration that gives it validity. *Neely v. Boland Manufacturing Co.*, 274 F.2d 195, 201 (8th Cir. 1960).

PRADCO has valid and enforceable registration rights in "Cordell," "Cotton Cordell," and "Big O" distinctive to fishing lures. PRADCO has engaged in long-term use of the marks, has extensively advertised and promoted its products containing the marks, and has attempted to fend off others' use of the marks. The marks are very strong. Although PRADCO has not registered Fred Young's name as a trademark, the name qualifies as a strong mark based on PRADCO's extensive use of the name in advertising and promotion of the "Big O," the only lure for which Fred Young is known. Thus, the Fred Young name has a secondary designation as the source of the "Big O" tied solely to the Cotton Cordell line of tackle.

Bob Michaels has used PRADCO's marks in manufacturing and advertising to sell lures. Bob Michaels named its lures after Fred Young. In advertising, the lures are endorsed by Cotton Cordell who mentions Fred Young's creation of the "Big O." The mark "Cotton Cordell" has been used by Bob Michaels in naming its new website. Thus, there is a close similarity between PRADCO's marks and those used by Bob Michaels to sell its lures.

Bob Michaels contends its lures do not compete with PRADCO's because of the difference in construction, appearance, and price. *See* Defts' Ex. 10. However, the parties are involved in the fishing lure industry. The parties have new lures modeled after Fred Young's original lures. The price differential of the lures is not great and the lures appeal to the same buyers.

Regarding defendants' intent, it appears the Cordells are disenchanted with the deal Cotton Cordell struck in selling his business. The defendants are deliberately using the Cordell and Young names to promote their products and produce lures benefitting from Young's reputation tied to the "Big O." Defendants set up a cottoncordell.net website. Although the site is not as yet in operation, defendants intend to benefit from the mark. Defendants refused to cease and desist use of the marks

when advised of the plaintiffs' concerns. Although defendants deny they are attempting to pass off their lures as those of PRADCO's "Cotton Cordell" line of lures, their actions speak otherwise.

The article in *Fishin' News* indicates the strong likelihood of consumer confusion. If a fishing professional believes that two versions of the original "Big O" are being produced, it is highly likely that the average consumer will believe that in purchasing "Fred's Original" he is purchasing the "Big O." Because there is not a great cost differential between the lures, purchasers are not likely to exercise great care in purchasing them that would correct any confusion. Regarding the internet site, a purchaser wanting Cotton Cordell lures would likely try "cottoncordell" or "cordell" on the internet and would not likely use great care to confirm the source of the products if defendants' lures appeared on the webpage.

Even if defendants are not found liable for trademark infringement with respect to the use of the name of Fred Young, plaintiffs still have a substantial chance of prevailing on the unfair competition claims. In assessing unfair competition, the total impact of all aspects of the parties' selling efforts is relevant, including symbols, letters, pictures, colors, shapes, sizes, and advertising representations; thus, it is possible to be guilty of unfair competition even when trademark infringement is not present. 1 McCarthy on Trademarks and Unfair Competition (4th Ed. 2005) § 2:7. *See Parameter Driven Software, Inc. v. Massachusetts Bay Ins. Co.*, 25 F.3d 332, 336-37 (6th Cir. 1994). *See also Heaton Distributing Co. v. Union Tank Car Co.,* 387 F.2d 477 (8th Cir. 1967)(facts supporting a suit for infringement and unfair competition substantially identical); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368 (5th Cir. 1977)(noting that trademark infringement is narrower aspect of unfair competition but both turn on likelihood of confusion).

Bob Michaels is engaged in of unfair competition by using the Fred Young name tied solely to the "Big O" due in large part to PRADCO's extensive advertising and marketing efforts. An asset purchased from Cordell Tackle was the right to use Fred Young's name in association with the "Big O." Bob Michaels admits it is using Fred Young's name to lend credibility to its lures. The overall impression created by the packaging and advertising of Bob Michael's "Fred's Original" is that the consumer is buying the "Big O" originally carved by Fred Young. The advertising for the lure in the Bass Pro Shops catalogue calls the lure a "classic 'alphabet' bait" first carved by Fred Young in the 1970's. The ad mentions that Cotton Cordell made fishing history by introducing the "Big O" in 1972 and shows a photograph of Cotton Cordell who lauds the lure, stating the lures are built as close as possible to the way Young did. Although the packaging and advertising of "Fred's Secret" takes pains to say this is a lure not produced before, Bob Michaels is exploiting and taking advantage of the reputation and credibility of Fred Young built on the success of one lure, the "Big O," and the result is consumer confusion as to the source of the goods. Further, although the cottoncordell.com website is not activated and currently in use, the mark "Cotton Cordell" is intimately associated with PRADCO's line of fishing lures and an individual using the internet seeking "Cotton Cordell" tackle would likely enter this name in a web search.

*Irreparable Injury; Balance of Harms*

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)). "Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief." 11A Wright, Miller, & Kane, Federal Practice and Procedure, Civil 2nd §

2948.1 at 144, 149. The absence of a showing of the threat of irreparable harm by the moving party is alone sufficient to deny preliminary relief. *Dataphase*, 640 F.2d at 114 n. 9;

Preliminary injunctive relief is generally denied where it appears the applicant has an adequate remedy in the form of money damages or other relief. 11A Wright, Miller and Kane, § 2948.1, at 149-151. However, "[i]njury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable." *Id.* at 159.

A trademark represents intangible assets such as reputation and goodwill, and the showing of irreparable injury can be satisfied if it appears that plaintiff can demonstrate a likelihood of consumer confusion. *General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 624 (8th Cir. 1987). In trademark infringement cases, therefore, it is not necessary to prove actual damages or injury to obtain injunctive relief. *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 403 n.11 (8th Cir. 1987). "Injury is presumed once a likelihood of confusion has been established." *Id*. (citation omitted).

Here, defendants use of "Cotton Cordell," "Big O," and "Fred Young" in connection with their lures creates a likelihood of confusion and, unless restrained, consumer confusion will result. Also, defendants have no way of ensuring quality control of those goods. *See* Ex. 12 to Motion for Preliminary Injunction. Thus, plaintiffs have shown irreparable harm.

The harm to plaintiffs from the continued use of the marks by defendants is great, including product confusion and loss of good will and reputation. Although defendants will suffer financially from discontinuing use of the names "Cordell," "Cotton Cordell," "Big O" and "Fred Young" in relation to fishing lures, they will suffer no legitimate harm since they were not entitled to use the names in the first place and should not be protected from the infringement and unfair competition.

Defendants are not prohibited from manufacturing fishing lures that do not contain the infringing marks or otherwise create unfair competition.

*Public Interest*

The public interest is best served by preventing trademark infringement and unfair competition resulting in consumer confusion. The court should grant an injunction to prevent further damage to goodwill and reputation and protect the public interest in avoiding confusion.

CONCLUSION

Based on the above, I recommend that the court enter a preliminary injunction enjoining the defendants during the pendency of this action from further use of the names "Cordell," "Cotton Cordell," "Big O," or "Fred Young" in manufacturing, advertising, or distributing lures or in creating or using internet sites.

**The parties have ten day from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

DATED this 7th day of September 2005.

/s/Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE